

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>LIM XIANG JIE CEDRIC,<br>MING-SHEN CHENG,<br>KO SEN CHAI,<br>KING SUNG WONG,<br>SIONG WEE VUN,<br>CHIEN LUNG MA, and<br>KOK WAH WONG | Case No.<br><br>Violations: Title 18, United States Code, Sections 1343 and 1348(1)<br><br>1:25-cr-00161<br>Judge LaShonda A. Hunt<br>Magistrate Judge Maria Valdez<br>RANDOM / Cat. 3 |

**COUNTS ONE – SEVEN**

The SPECIAL JUNE 2024 GRAND JURY charges:

1. At times material to this indictment:

    a. China Liberal Education Holdings, Ltd. ("CLEU") was a holding company incorporated in the Cayman Islands that conducted its operations through subsidiaries in China and purported to provide educational services. CLEU's stock traded on the NASDAQ stock exchange in the United States and it was required to file reports with the United States Securities and Exchange Commission ("SEC").

    b. Company A was a financial company, headquartered in the state of Texas, that provided brokerage services.

    c. Company B was a financial company, headquartered in the state of New Jersey, that provided brokerage services.

  d. Defendant LIM XIANG JIE CEDRIC was a resident of Malaysia who held a brokerage account at Company A and traded CLEU's stock in that account.

  e. Defendant MING-SHEN CHENG was a resident of Taiwan who held a brokage account at Company A and traded CLEU's stock in that account.

  f. Defendant KO SEN CHAI was a resident of Malaysia who held a brokerage account at Company A and traded CLEU's stock in that account.

  g. Defendant KING SUNG WONG was a resident of Malaysia who held a brokerage account at Company A and traded CLEU's stock in that account.

  h. Defendant SIONG WEE VUN was a resident of Malaysia who held a brokerage account at Company B and traded CLEU's stock in that account.

  i. Defendant CHIEN LUNG MA was a resident of Taiwan who held a brokerage account at Company B and traded CLEU's stock in that account.

  j. Defendant KOK WAH WONG was a resident of Malaysia who held a brokerage account at Company B and traded CLEU's stock in that account.

  k. Investor A resided in the Northern District of Illinois and purchased CLEU stock.

  l. NASDAQ required companies listed on its exchange to maintain a minimum bid price of $1 per share. As of the close of trading on December 23, 2024, CLEU's share price traded at approximately $0.162, which was below the minimum bid price of $1.

m. On or about December 24, 2024, CLEU executed a share consolidation that consolidated every 15 ordinary shares of its stock into one ordinary share, resulting in a total amount of approximately 29 million outstanding shares of stock. Afterwards, the value of CLEU's stock increased above $1 per share. This share consolidation was publicly announced on January 13, 2025.

n. On or about January 27, 2025, CLEU publicly disclosed for the first time in a filing with the SEC that it had issued approximately 240 million shares on December 31, 2024, and that as of January 27, 2025, there were approximately 269 million shares of CLEU stock outstanding. At that time, the value of CLEU stock was trading at approximately $7.30 per share, but at the end of the trading day on January 30, 2025, CLEU's stock price dropped to approximately $0.14 per share.

o. Between about January 10 and January 21, 2025, prior to CLEU's public announcement on January 27, 2025, that it had issued approximately 240 million shares on December 31, 2024, defendants received millions of shares of CLEU stock.

2. Beginning no later than November 2024, and continuing through February 2025, in the Northern District of Illinois, Eastern Division, and elsewhere,

LIM XIANG JIE CEDRIC,
MING-SHEN CHENG,
KO SEN CHAI,
KING SUNG WONG,
SIONG WEE VUN,
CHIEN LUNG MA, and
KOK WAH WONG,

3

defendants herein, knowingly devised, intended to devise, and participated in a scheme to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, which scheme is further described below.

3. It was part of the scheme that CEDRIC, CHENG, CHAI, KING SUNG WONG, VUN, MA, and KOK WAH WONG, together with their co-schemers, engaged in misleading promotion and coordinated trading of CLEU stock that caused the price of CLEU's stock artificially to rise and then ultimately to decrease significantly, at the expense of other investors who had been purchasing the stock.

4. It was further part of the scheme that in January 2025, investors based in the United States, including Investor A, were contacted through electronic messaging services by individuals purporting to be investment advisors in the United States, including Chicago, Illinois, when in fact, these individuals were not actually U.S.-based investment advisors and were based in China.

5. It was further part of the scheme that in January 2025, while investors were being fraudulently contacted by individuals posing as U.S.-based investment advisors, CEDRIC, CHENG, CHAI, KING SUNG WONG, VUN, MA, and KOK WAH WONG, all received shares of CLEU stock directly from CLEU prior to the issuance and transfer of that stock being disclosed to the public on January 27, 2025. At the time of these transfers, CLEU was publicly representing that the total outstanding shares of CLEU stock was approximately 29 million, when in actuality, because of

4

the undisclosed stock that had been transferred, the number of CLEU shares available for sale on the market was much higher.

6. It was further part of the scheme that on or about January 14, 2025, CHENG deposited approximately 9,278,975 shares of CLEU stock into a brokerage account at Company A.

7. It was further part of the scheme that on or about January 14, 2025, KING SUNG WONG deposited approximately 9,329,500 shares of CLEU stock into a brokerage account at Company A.

8. It was further part of the scheme that on or about January 15, 2025, CEDRIC deposited approximately 6,110,000 shares of CLEU stock into a brokerage account at Company A.

9. It was further part of the scheme that on or about January 15, 2025, CHAI deposited approximately 9,188,500 shares of CLEU stock into a brokerage account at Company A.

10. It was further part of the scheme that on or about January 17, 2025, KOK WAH WONG deposited approximately 4,936,410 shares of CLEU stock into a brokage account at Company B.

11. It was further part of the scheme that on or about January 21, 2025, MA deposited approximately 8,949,270 shares of CLEU stock into a brokerage account at Company B.

12. It was further part of the scheme that, as CEDRIC, CHENG, CHAI, KING SUNG WONG, KOK WAH WONG, and MA were depositing CLEU shares into

their brokerage accounts, individuals posing as U.S.-based investment advisors were fraudulently soliciting investors, including Investor A, to purchase CLEU stock from, among others, CEDRIC, CHENG, CHAI, KING SUNG WONG, KOK WAH WONG, and MA.

13. It was further part of the scheme that on January 22, 2025, KOK WAH WONG sold all 4,936,410 shares of CLEU stock in KOK WAH WONG's Company B brokage account and made approximately $26 million on the trades.

14. It was further part of the scheme that on January 22, 2025, CHENG sold all 9,278,975 shares of CLEU stock in CHENG's Company A brokage account and made approximately $49 million on the trades.

15. It was further part of the scheme that on January 22, 2025, CHAI sold all 9,188,500 shares of CLEU stock in CHAI's Company A brokage account and made approximately $49 million on the trades.

16. It was further part of the scheme that on or about January 22, 2025, and January 23, 2025, MA sold all 8,949,270 shares of CLEU stock in MA's Company B brokerage account and made approximately $48 million on the trades.

17. It was further part of the scheme that on or about January 22, 2025, CEDRIC sold 3,687,598 shares of CLEU stock in CEDRIC's Company A brokerage account and made approximately $19 million on the trades.

18. It was further part of the scheme that on January 23, 2025, KING SUNG WONG sold all 9,329,500 shares of CLEU stock in KING SUNG WONG's Company A brokage account and made approximately $57 million on the trades.

19. It was further part of the scheme that on or about January 22, 2025 and January 23, 2025, CEDRIC, CHAI, CHENG, and KING SUNG WONG collectively sold approximately 31,484,573 shares of CLEU stock and collectively made approximately $176 million on the trades. On or about January 23, 2025, Company A prohibited CEDRIC, CHAI, CHENG, and KING SUNG WONG from selling any additional CLEU stock using their Company A brokerage accounts.

20. It was further part of the scheme that between on or about January 24, 2025, and January 29, 2025, after Company A had prohibited CEDRIC, CHAI, CHENG, and KING SUNG WONG from selling any additional CLEU stock, CEDRIC, CHAI, CHENG, and KING SUNG WONG collectively entered and immediately canceled more than approximately 2,500 orders to purchase approximately 56 million shares of CLEU stock in an effort to cause purported demand for the shares to increase the value of the stock.

21. It was further part of the scheme that on or about January 29, 2025, VUN deposited approximately 7,285,000 shares of CLEU stock into a brokerage account at Company B. That same day, VUN sold all of these shares and made approximately $56 million on the trades.

22. It was further part of the scheme that, on or about January 30, 2025, after CLEU's public filing with the SEC that accurately reported the number of outstanding CLEU shares, including those sold by CEDRIC, CHENG, CHAI, KING SUNG WONG, KOK WAH WONG, MA, and VUN, the value of CLEU's share price dropped approximately 99% percent, causing over 600 U.S.-based investors and other

investors located across the world, including Investor A, to lose almost the entirety of their investments in CLEU stock.

23. It was further part of the scheme that CEDRIC, CHENG, CHAI, KING SUNG WONG, KOK WAH WONG, VUN, and MA did misrepresent, conceal, and hide, and cause to be misrepresented, concealed and hidden, the true acts and the purposes of the acts done in furtherance of the scheme.

24. On or about the approximate dates below, in the Northern District of Illinois, Eastern Division, and elsewhere,

LIM XIANG JIE CEDRIC,
MING-SHEN CHENG,
KO SEN CHAI,
KING SUNG WONG,
SIONG WEE VUN,
CHIEN LUNG MA, and
KOK WAH WONG,

defendants herein, for the purpose of executing the above-described scheme, did knowingly cause to be transmitted by means of wire communication in interstate commerce, certain, writing, signs, and signals, namely, the electronic transfers of CLEU shares into brokerage accounts at Company A and Company B as follows:

| Count | Date | Defendant | Transaction |
|---|---|---|---|
| 1 | 1/15/25 | CEDRIC | Transfer of 6,110,000 CLEU shares |
| 2 | 1/14/25 | CHENG | Transfer of 9,278,975 CLEU shares |
| 3 | 1/15/25 | CHAI | Transfer of 9,188,500 CLEU shares |
| 4 | 1/14/25 | K.S. WONG | Transfer of 9,329,500 CLEU shares |
| 5 | 1/29/25 | VUN | Transfer of 7,285,000 CLEU shares |
| 6 | 1/21/25 | MA | Transfer of 8,949,270 CLEU shares |
| 7 | 1/17/25 | K.W. WONG | Transfer of 4,936,410 CLEU shares |

In violation of Title 18, United States Code, Section 1343.

## COUNTS EIGHT – FOURTEEN

The SPECIAL JUNE 2024 GRAND JURY further charges:

1. The allegations in paragraphs 1-23 of Count One of this indictment are incorporated here.

2. Beginning no later than November 2024, and continuing through February 2025, in the Northern District of Illinois, Eastern Division, and elsewhere,

> LIM XIANG JIE CEDRIC,
> MING-SHEN CHENG,
> KO SEN CHAI,
> KING SUNG WONG,
> SIONG WEE VUN,
> CHIEN LUNG MA, and
> KOK WAH WONG,

defendants herein, knowingly participated in a scheme to defraud persons in connection with a security of an issuer, namely CLEU, with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 and that was required to file reports under Section 15(d) of the Securities Exchange Act of 1934.

3. The allegations in paragraphs 3-23 of Count One of this indictment are incorporated here.

4. On or about the approximate dates below, defendants, for the purpose of executing the above-described scheme, knowingly executed the scheme by selling shares in CLEU stock as follows:

| Count | Date | Defendant | Transaction |
| --- | --- | --- | --- |
| 8 | 1/22/25 | CEDRIC | Sold 3,687,598 CLEU shares |
| 9 | 1/22/25 | CHENG | Sold 9,278,975 CLEU shares |
| 10 | 1/22/25 | CHAI | Sold 9,188,500 CLEU shares |
| 11 | 1/23/25 | K.S. WONG | Sold 9,329,500 CLEU shares |
| 12 | 1/29/25 | VUN | Sold 7,285,000 CLEU shares |
| 13 | 1/22/25 | MA | Sold 7,861,881 CLEU shares |
| 14 | 1/22/25 | K.W. WONG | Sold 4,936,410 CLEU shares |

In violation of Title 18, United States Code, Section 1348(1).

**FORFEITURE ALLEGATION**

The SPECIAL JUNE 2024 GRAND JURY further alleges:

1. The allegations contained in this indictment are incorporated herein for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(l)(C) and Title 28, United States Code, Section 2461(c).

2. As a result of their violations of Title 18, United States Code, Sections 1343 and 1348(1),

> LIM XIANG JIE CEDRIC,
> MING-SHEN CHENG,
> KO SEN CHAI,
> KING SUNG WONG,
> SIONG WEE VUN,
> CHIEN LUNG MA, and
> KOK WAH WONG,

defendants herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(l)(C), and Title 28, United States Code, Section 2461(c), any and all right, title, and interest they may have in any property, real and personal, which constitutes and was derived from proceeds traceable to such violation.

3. The property to be forfeited includes, but is not limited to:

   a. The following specific property:

      i. $19,901,190.49 seized on February 10, 2025, from CEDRIC's Company A brokerage account ending in 9087;

      ii. $37,905,571.53 seized on February 10, 2025, from CHENG's Company A brokerage account ending in 8688;

      iii. $46,318,096.30 seized on February 10, 2025, from CHAI's Company A brokerage account ending in 6638;

      iv.  $55,348,559.17 seized on February 10, 2025, from KING SUNG WONG's Company A brokerage account ending in 2412;

      v.  $36,933,675.50 in cash and securities seized on February 28, 2025, from VUN's Company B brokerage account ending in 1498;

      vi.  $72,842.36 in cash and securities seized on February 28, 2025, from MA's Company B brokerage account ending in 1535; and

      vii.  $18,404,800.39 seized on February 28, 2025, from KOK WAH WONG's Company B brokerage account ending in 1401.

4. If any of the forfeitable property described above, as a result of any act or omission by the defendants:

    a.  cannot be located upon the exercise of due diligence;

    b.  has been transferred or sold to, or deposited with, a third party;

    c.  has been placed beyond the jurisdiction of the Court;

    d.  has been substantially diminished in value; or

    e.  has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(l).

All pursuant to Title 18, United States Code, Section 981(a)(l)(C), and Title 28, United States Code, Section 2461(c).

A TRUE BILL:

_____
FOREPERSON

_____
Signed by Jason Yonan on behalf of the
ACTING UNITED STATES ATTORNEY